UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JORGE EDGARDO LUGO,
    Plaintiff,

v.

WARDEN A. HANNAH, et. al.,
    Defendants.

No. 3:19-cv-01270 (VLB)

June 26, 2020

## MEMORANDUM OF DECISION DENYING MOTION TO DISMISS, [ECF NO. 19]

On August 15, 2019, Jorge Edgardo Lugo ("Plaintiff"), an inmate currently confined at the Garner Correctional Institution ("Garner") in Newtown, Connecticut, filed a complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983, against four Connecticut Department of Correction ("DOC") officials for monetary, injunctive, and declaratory relief for rights violations under the First Amendment of the United States Constitution; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*; and Article First, § 3 of the Connecticut Constitution by denying him access to a religious book. [ECF No. 1 at 1, 6]. The defendants are Warden A. Hannah, Director of Security Antonio Santiago, Counselor Supervisor M. Calderon, and Mail Room Clerk Ms. Adams ("Defendants"). *Id.* at 1-3. On September 24, 2019, this Court issued an Initial Review Order ("IRO") dismissing Plaintiff's State Constitution claim. [ECF No. 7]. The IRO allowed the First Amendment free exercise claim against all defendants in their individual capacities for damages and in their official capacities for injunctive relief, as well as the RLUIPA claim against Hannah, Santiago, and Calderon in their official capacities for injunctive relief, to proceed. *Id.* at 8.

On November 26, 2019, Defendants filed a Motion to Dismiss Plaintiff's First Amendment free exercise claim for money damages pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See generally* [ECF Nos. 19, 19-1]. On January 9, 2020, during a teleconference to discuss outstanding discovery issues, the court *sua sponte* appointed counsel for Plaintiff, citing the "unique nature of this case." [ECF No. 24]. On January 20, 2020, Attorney Kelly E. Petter filed a Notice of Appearance on behalf of Plaintiff. [ECF No. 29]. Plaintiff, through counsel, filed an opposition to Defendants' Motion to Dismiss on February 20, 2020. [ECF No. 31]. On March 11, 2020, Defendants filed a reply to Plaintiff's opposition. [ECF No. 33]. For the following reasons, Defendants' Motion to Dismiss is DENIED.

## I. STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## II. ALLEGATIONS

In reviewing a motion to dismiss, the Court considers the allegations of the complaint to be true. *Hayden*, 594 F.3d at 161.

Plaintiff is an adherent of the Wiccan faith. [ECF No. 1 ¶ 7]. On or about April 23, 2019, Garner received the copy of the "Witches Craft – A Multidenominational Wicca Bible," by Bruce K. Wilborn, ("the bible") that Plaintiff had ordered in furtherance of the exercise of his religious beliefs. *Id.* ¶¶ 7-9.

On May 2, 2019, Defendant Adams rejected the bible "in its entirety" on the grounds that it was "written in code," and the next day Defendant Supervisor Calderon upheld the rejection without examining the bible's contents. *Id.* ¶¶ 10, 12.

3

Plaintiff appealed Adams' and Calderon's rejection of the bible.  *Id.* ¶ 13.  On May 8, 2019, Defendant Warden Hannah rejected Plaintiff's appeal, upholding the bible's rejection without reviewing its contents.  *Id.*  Plaintiff then appealed Hannah's decision to Defendant Director Santiago.  *Id.* ¶ 14.

On or about June 6, 2019, Defendant Santiago also upheld the rejection of the bible.  *Id.* ¶ 15. Santiago concluded:

> There is one chapter in this publication [en]titled, 'Runes, Symbols and Rituals.'  Contained within that chapter are 5 pages which display six different Rune Alphabets and their translations.  It was determined [that] the particular nature of this material (i.e. codes and symbols) could easily be used in a manner to circumvent security.  In support of this decision, on page 226, the author writes, 'During early times, it was common place for witches to use secret majickal alphabets to write down prayers, invocation, and other religious beliefs, thereby ensuring privacy from non-witches.'

*Id.*

No offer was made to Plaintiff to remove or redact the five offending pages, which also discuss historical aspects of the Wiccan faith, and provide the remainder of the bible, which is otherwise written entirely in English.  *Id.* ¶¶ 16d, 17.  The outright denial of the bible has deprived Plaintiff of the ability to exercise his faith, and has caused him frustration, anxiety, stress, anger, headaches, sleep deprivation, depression, and an upset stomach.  *Id.* ¶ 20.

### III. DISCUSSION

Plaintiff alleges that the conclusion reached by Defendants to withhold the bible is unreasonable for six reasons: (1) Plaintiff has never been found to attempt to "circumvent security" in any way; (2) should Plaintiff attempt to do so, Defendants could subject him to disciplinary action; (3) Defendants could use the translations provided in the bible to stop attempts at circumventing security by deciphering any coded communications; (4) Defendants have not

offered to redact the five offending pages and provide the remaining material; (5) the author was merely describing historical practices of Wicca followers in the face of what Plaintiff alleges to be similar religious prejudice; and (6) non-English alphabets and symbols are used in many other religions, including Catholicism, Islam, and Judaism.  [ECF No. 1 ¶ 16a-f].  Further, Plaintiff alleges that Defendants' refusal to provide the bible has impacted his ability to practice his religion in violation of the First Amendment.  *See generally* [ECF No. 1].

Defendants argue in their motion to dismiss that they are shielded by qualified immunity because "there is no clearly established right of an inmate to possess books or other materials containing the means to allow inmates to communicate in code."  [ECF No. 19-1 at 1].  Additionally, Defendants Santiago, Calderon, and Hannah argue they are entitled to qualified immunity "on the grounds that it is not clearly established that denying an appeal of a grievance is sufficient to establish personal involvement for purposes of a § 1983 action." *Id.*

### A. Qualified Immunity for All Defendants

Defendants argue that they are shielded by qualified immunity on the grounds that there is no case holding that "inmates have a right to possess 'runes' or 'rune alphabets' or any other similar materials that could be utilized to communicate in code."  [ECF No. 19-1 at 10].

Government officials like Defendants are shielded by qualified immunity from liability for civil damages "unless a plaintiff pleads facts showing (1) that 'the official[s] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'"  *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 572 U.S.

744, 745 (2014)). A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

While the defense of qualified immunity can be "presented in a Rule 12(b)(6) motion . . . [it] faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004). Defendants must therefore "accept the more stringent standard applicable to this procedural route." *Id.* at 436. The motion may only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

Defendants in the instant case narrowly define the right at issue to be an inmate's right to possess runes, or rune alphabets, that would enable an inmate to communicate in code to circumvent prison security. [ECF No. 19-1 at 10]. Plaintiff, on the other hand, claims that Defendants' refusal to provide the bible in its entirety violates an inmate's "clearly defined and established . . . right[] to practice . . . [his] religion" and that Defendants' decision to withhold the bible was "not objectively reasonable." [ECF No. 31 at 3].

"'[C]ourts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue.' The definition must be 'particularized in the sense that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Malave v. Weir*, 750 F. App'x 65, 66 (2d Cir. 2019) (quoting *Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014)). Given that Plaintiff is entitled to "all reasonable

6

inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense," *McKenna*, 386 F.3d at 436, the Court finds that the challenged conduct, the refusal of a bible, violates the well-established right of an inmate to freely exercise his religion under the First Amendment. The alleged facts provided by Plaintiff support this finding at this stage in the proceedings because Defendants not only withheld the five pages containing runes and rune alphabets, which could enable Plaintiff to communicate in code, but rather refused to provide the bible in its entirety. [ECF No. 1 ¶ 16d].

For more traditional religions like Christianity, Judaism, and Islam, access to bibles or biblical equivalents is rarely at issue, as these texts are often provided by prison libraries or not disputed when requested by inmates. *See, e.g., Pierce v. La Vallee*, 293 F.2d 233, 236 (2d Cir. 1961) (finding prison officials' initial refusal to allow inmates to purchase Koran violated their Constitutional rights; case was resolved by prison making the Koran available for purchase through normal prison procedures). Moreover, "under certain circumstances, the absence of specific authority directly on point will not preclude a finding that the law was clearly established." *Shabazz v. Coughlin,* 852 F.2d 697, 701 (2d Cir. 1988). The Court finds this to be the case here: every reasonable official would understand that refusing a bible to a religious inmate is a violation of the inmate's First Amendment rights.

The Court also notes the validity of Plaintiff's argument that Defendants' decision to deny even the five pages only containing the runes was unreasonable: indeed, any attempts by Plaintiff to "circumvent security could not be kept 'secret' where [D]efendants acknowledge the publication contains

7

'their translations.'"  [ECF No. 1 ¶ 16c].  Because Defendants could have copied the translations of the offending 'coded alphabets' and used the translations to decipher any coded communications, the Court finds no factual support for the claim that withholding the coded pages was related to a legitimate penological interest, as would be necessary for the Court to find no First Amendment violation.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (holding prison policy does not violate inmate's First Amendment right to free exercise of religion if "reasonably related to legitimate penological interests.").

> Finally, the Court emphasizes the procedural posture of this case:
>
> Qualified immunity should be decided as early as possible in a case, but it is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed.  In essence, qualified immunity should be granted under Fed. R. Civ. P. 12(b)(6) if the face of the complaint clearly establishes the nonexistence of a constitutional right.  Further facts may be required, however, where the plaintiff's complaint plausibly states a claim for [violation of a constitutional right]. After discovery is complete, where there are no genuinely disputed factual issues material to the qualified immunity defense, a defendant may move for summary judgment dismissing the plaintiff's claim on that basis.

*Neary v. Naqvi*, No. 3:14-cv-01631 (VLB), 2017 WL 3205471, at *15 (D. Conn. July 27, 2017) (citations omitted), *aff'd Neary v. Wu*, 753 F. App'x 82 (2d Cir. 2019). The Court, therefore, at this stage, DENIES Defendants' motion to dismiss.

### B. Qualified Immunity for Defendants Santiago, Calderon, and Hannah

When a defendant argues against the merits of a plaintiff's claim in a motion to dismiss, and the plaintiff fails to address it in their opposition brief, the court may, at its discretion, consider that claim abandoned.  *See, e.g., In re Kingate Mgmt. Ltd. Litig.*, 746 F. App'x 40, 43 (2d Cir. 2018) (affirming district court's holding that plaintiffs waived an argument by "failing to raise it in response to Defendants' motion to dismiss"); *Leach v King*, No. 3:16-cv-00861

8

(SRU), 2018 WL 1514243 at *4 (D. Conn. Mar. 27, 2018) (considering claims abandoned where plaintiff failed to address merits of arguments against them in opposition to motion to dismiss).

In their motion to dismiss, Defendants Santiago, Calderon, and Hannah argue that they are shielded by qualified immunity because it is not clearly established in law that, for the purposes of a § 1983 claim, denying a grievance is sufficient to establish personal involvement. [ECF No. 19-1 at 12]. This argument was not addressed by Plaintiff in his opposition brief. *See generally* [ECF No. 31]. However, the Court finds that while this omission might serve to constitute a concession as to the correctness of Defendants' argument, the substance of the Defendants' argument fails for much the same reason that their first argument fails: it is well established that prison officials cannot deprive an inmate of his right to worship his chosen faith.

Courts in this Circuit find personal involvement by considering the following factors:

> (1) [he or she] participated directly in the alleged constitutional violation, (2) [he or she], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) [he or she] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) [he or she] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) [he or she] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Brandon v. Kinter*, 938 F.3d 21, 36-37 (2d Cir. 2019) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (affirming district court's finding that the fact that prison supervisory defendants had signed off on Plaintiff's grievance forms and were aware of their filings created a genuine dispute of fact as to whether the defendants were personally involved for purposes of § 1983 claim). The express

9

purpose of the grievance process is to afford prison officials the opportunity to remedy wrongs.  Department of Corrections Administrative Directive 9-6.  Thus, officials charged with adjudicating grievances had an affirmative duty to resolve legitimate complaints by correcting individual and systematic policies which violated an inmate's constitutional rights.  By failing to remedy the deprivation, these defendants were personally involved in the deprivation.   Were that not the case, filing a grievance would epitomize the proverbial dead end.

The Court therefore finds that for the purposes of this motion at this stage in the proceedings, the law is sufficiently clear to put the defendants on notice of their personalized role in the constitutional violation, and the motion to dismiss on the basis of qualified immunity is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 19], is DENIED.

IT IS SO ORDERED

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 26, 2020